**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOSE ERNESTO GONZALEZ CARDONA** | **CIVIL ACTION** |
| v. | **No. 26-4430** |
| **J.L. JAMISON,** *et al.* | |

**Henry, J.**                                                                                          **June 30, 2026**

## MEMORANDUM

Jose Ernesto Gonzalez Cardona is one of many who have recently been detained by immigration authorities under the purported authority of Immigration and Nationality Act (INA) § 235, *codified at* 8 U.S.C. § 1225. Respondents argue that this statute, properly interpreted, permits them to treat as "seeking admission" an immigrant who was not inspected upon arrival in the country, no matter how long ago that arrival occurred. This distinction deprives a detainee like Gonzalez Cardona of any hearing at which he could try to prove that he should be released on bond. Because I join the analysis of many other decisions in the past year rejecting the BIA's analysis, and because I am more persuaded by appellate authority that favors the petitioner, I grant Gonzalez Cardona's petition for a writ of habeas corpus and order his immediate release, subject to possible later rearrest.

## I. Background

On June 28, 2026, Gonzalez Cardona filed a petition for a writ of habeas corpus. Respondents have offered no dispute as to the factual content of the petition or suggested the need for further evidence. *See* Opp. 4 ("case turns principally on the threshold question of statutory interpretation").

Gonzalez Cardona is detained at the Philadelphia Federal Detention Center (FDC) under Warden J.L. Jamison, after being arrested by immigration authorities. Pet'n ¶ 6. He entered the United States in 2007, *id*. ¶ 17, evidently coming from Guatemala, *see id.* ¶ 21; exhibit 1 (using "Guatemala" as country of birth in ICE locator). On June 26, 2026, Gonzalez Cardona was arrested while he was on his way to work. *Id*. ¶ 20.

Because Gonzalez Cardona is detained under the government's reading of the mandatory detention provision of 8 U.S.C. § 1225 (INA § 235), Respondents have determined that he will not be permitted a bond hearing, Opp. 9. Gonzalez Cardona argues that the mandatory detention provision is inapplicable and applied against the statute and the constitution because he is not "seeking admission."

## II. <u>Discussion</u>

As Respondents acknowledge, "the case turns principally on the threshold question of statutory interpretation" regarding the immigration detention statutes. Opp. 4. The question resolves into arguments about interpreting Section 1225, which may also touch on the Constitution's Due Process Clause as well as immigration regulations. The issue has been considered directly by several appellate courts in recent months. *Lopez-Campos v. Raycraft*, 175 F.4th 713, 735 (6th Cir. May 11, 2026) (split opinion against government's reading); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami,* et al., 175 F.4th 1258, 1285 (11th Cir. May 6, 2026) (split opinion against government's reading); *Barbosa da Cunha v. Freden*, 175 F.4th 61, 96 (2d Cir. Apr. 28, 2026) (unanimously against government's reading); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. Feb. 6, 2026) (split opinion in favor of government); *Avila v. Bondi*, 170 F.4th 1128, 1138 (8th Cir. Mar. 25, 2026) (split opinion in favor of government). The Seventh Circuit in *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1062 (7th Cir. 2025)

concluded at the level of a preliminary injunction that the government was not likely to succeed on the merits of its argument for mandatory detention of applicants for admission present under § 1225(b)(2)(A)), but in a more recent opinion the panel split three ways, with one judge in favor of and one opposed to the government's reading and one not reaching the merits because of a local procedural issue not present here, *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 175 F.4th 828, 857 (7th Cir. May 5, 2026) (Pryor, J., concurring in part and in the judgment). The Court of Appeals for the Third Circuit, whose decisions bind this Court, has before it appeals of the same issue, *Lopes De Andrade v. Director Philadelphia Field Office Immigration and Customs Enforcement, et al.*, No. 26-1454 (3d Cir.), which was argued recently.

Respondents also cite two decisions by the Supreme Court several days before the petition's filing. First, in *Blanche v. Lau*, 2026 WL 1791339 at *2 (U.S. June 23, 2026), the Supreme Court considered the rights of a lawful permanent resident returning to the United States after a trip abroad during the pendency of a criminal charge, holding that the INA does not require a border officer to have clear and convincing evidence of criminal activity to consider the person admitted upon arrival. The respondents argue that the Court in *Lau* appeared to use "applicant for admission" the same way as person "seeking admission," which lends credence to its argument that applying for and seeking admission are not independent. The respondents argue similarly from the text of *Mullin v. Al Otro Lado*, 2026 WL 1825741 (U.S. June 25, 2026), albeit with fewer examples.

The question in those cases generally, as made particular here: Is Gonzalez Cardona properly detained under the mandatory detention provisions in 8 U.S.C. § 1225? According to Respondents, this detention falls within the ambit of § 1225(b)(2)(A): "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien

*seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained . . ." (emphasis added). Respondents claim that Gonzalez Cardona was "seeking admission" under this section, although he had been in the country since 2007, and was detained in June of 2026. This reading suffers from several textual problems: It is not a plain reading of the text, since it would run against statutory definitions (and be strange otherwise) to say that Gonzalez Cardona "seeks" to be "admitted" to a place he had already entered. *Barbosa da Cunha*, 175 F.4th at 82. It threatens to make meaningless the concurrent requirement that the same "alien *seeking* admission" be an "*applicant* for admission." *Id.*; *Buenrostro-Mendez*, 166 F.4th at 509 (Douglas, J., dissenting). It would similarly make Congress's recent enactment of the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), which separately expanded mandatory detention, "beside the point." *Demirel*, 2025 WL 3218243 at *4 (E.D. Pa. Nov. 18, 2025) (citing *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995)). *But see Buenrostro-Mendez*, 166 F.4th at 505 (offering alternative analysis of effect of Laken Riley Act). And it would seem to contravene the Supreme Court's own interpretation of the function of these statutes. *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) ("law authorizes the Government to detain certain *aliens seeking admission* into the country under §§ 1225(b)(1) and (b)(2) [and] to detain certain *aliens already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)").

As to the recent Supreme Court cases, the respondents' arguments from the Court's wording rather than the reasoning or holdings of *Blanche* and *Al Otro Lado* indicates the relative weakness of the connection. The holdings of neither decision compel a result here, and it would seem a stretch therefore to read the majorities behind each opinion to have implied their attachment to each minor phrase. In *Blanche*, the Court split on whether a lawful permanent resident who has committed a crime may "be regarded as seeking an admission" under 8 U.S.C.

§ 1101(a)(13)(C)(v). The question therefore involved not whether the person *was seeking* admission in its actual meaning but only whether the person was *so regarded*. The Court considered the matter in three quick paragraphs. *Lau*, 2026 WL 1791339 at *3; *see id.* *6 (Jackson, J., dissenting) (same provision "treat[s] as if" or "deem[s]" the noncitizen as "seeking an admission"). The nature of the "regarded as" clause in § 1101 therefore functions like the "deem" clause in § 1225(a), transforming "abracadabra-style" the word as it normally performs into a creature of the statute that might not otherwise literally apply. *Barbosa da Cunha*, 175 F.4th at 76. "Where a statute deems a term to have a particularized meaning, an analogy to its use in everyday conversation is of limited help." *Id.* Thus, where a speaker (or the Court) is not taking pains to excavate a term's precise contextual meaning, it would be mistaken to rely too heavily on her use of that term—and only much more so where the terms are sometimes ripped from the everyday use that speaker is more likely employing. Unless a decision begins by asking "what is a chicken?", 190 F.Supp. 116, 117 (S.D.N.Y. 1960), its use of that word might not be a strong basis for a textual argument. *See Holly Farms Corp. v. N.L.R.B.*, 517 U.S. 392, 395–96 & n.2 (1996) (casually referring to the same birds as "broilers" and "chickens" and "birds" despite a footnote acknowledging a more specific meaning to the first); *Empire Kosher Poultry, Inc. v. Hallowell*, 816 F.2d 907, 909–10 (3d Cir. 1987) (referring apparently interchangeably to "poultry," "chickens," and "birds," and to the muscle as both "poultry" and "meat" in case about avian influenza eradication in Bird-in-Hand, PA).

Where this Court has spoken several hundred times on the matter in the past months, a deeper giving of reasons on this legal point would be merely cumulative. Because I find the statutory arguments sufficient to hold Gonzalez Cardona's present detention unlawful, I need not reach constitutional or regulatory arguments.

Respondents do not argue that Gonzalez Cardona is presently detained pursuant to both § 1226 and § 1225. Section 1226 permits detention but would generally permit the detainee to seek bond. The government has occasionally argued that these two sections cover non-overlapping groups of detainees. *See Demirel*, 2025 WL 3218243, at *5. Since Gonzalez Cardona has not had a bond hearing, even if I were to hold that he is detained pursuant to § 1226, his detention without a bond hearing would be unlawful.

### III. Conclusion

For the reasons given above, Gonzalez Cardona's present detention under § 1225 is unlawful, and he must be released. I will issue an order granting him a bond hearing upon any future detention under § 1226.